UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

LEON FORD, JR.,

    Defendant.

_____/

Case No. 00-80974

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION
TO REDUCE SENTENCE UNDER 18 U.S.C. § 3582(c)(1)(A) [105]**

Defendant Leon Ford, Jr. is currently in the custody of the Federal Bureau of Prisons ("BOP"), serving a 483-month sentence at FCI Pekin in Illinois. The matter is before the Court on Defendant's motion to reduce sentence under 18 U.S.C. § 3582(c)(1)(A). (Dkt. 105.) The government opposes the motion. (Dkts. 112, 113.) Defendant filed a reply. (Dkt. 114.) The Court finds that the facts and legal arguments are adequately presented in the motion and briefs. Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), Defendant's motion will be decided without a hearing. For the reasons set forth below, the Court GRANTS Defendant's motion.

**I.    Background**

On March 2, 2001, a jury found Defendant guilty of two counts of bank robbery in violation of 18 U.S.C. § 2113(a) and two counts of use of a firearm during and in relation to the commission of a crime of violence in connection with those robberies in violation of 18 U.S.C. § 924(c). The convictions stemmed from two bank robberies that occurred on April 5, 2000 and May 10, 2000. Defendant was acquitted of attempted robbery and

1

§ 924(c) charges stemming from a third incident.  Due to the mandatory statutes that applied at the time, Defendant faced a mandatory minimum of 10 years on the first § 924(c) conviction, a 25-year "stacked" mandatory minimum on the second § 924(c) count, and a consecutive mandatory guidelines range of 63 to 78 months on the remaining counts.  Thus, the lowest mandatory sentence was 483 months, which the Court imposed on August 2, 2001.[1]  Defendant's projected release date is June 5, 2035.

On January 1, 2020, Defendant petitioned the Warden of FCI Pekin for compassionate release.  (Dkt. 105-4.)  As the basis for his request, he relied on 1) his diabetes, which has resulted in blindness in his right eye, and 2) the changes in law reflected in the First Step Act regarding "stacked" sentences under § 924(c).  (*See id.* at PgID 328-29.)  Defendant listed his release address, explained that he had tried to make the best of his time in custody including having completed 65 classes, and stated that he is not a danger to the community "especially since now [he] cannot see hardly at all."  (*See id.* at PgID 330.)  The Warden denied Defendant's request on February 27, 2020.  (Dkt. 105-5.)

Defendant, through counsel, now moves this Court for compassionate release.  Defendant is currently 48 years old.  He suffers from Type II diabetes, high cholesterol, hypertension, and hypothyroidism.  (Dkts. 113-1, 113-2, filed under seal.)  Defendant notes he has no recent disciplinary history and has completed hundreds of hours of educational programming while incarcerated in addition to working as a GED tutor.

---

[1]At the time of sentencing, the Court rejected Defendant's argument that the sentence he faced under the mandatory statutes was so grossly disproportionate it violated the Eighth Amendment but noted "[i]t certainly is higher than other bank robbery defendants.  It is certainly is well beyond what it would have been a couple of years ago when it was still a five-year statute."  (Dkt. 105-6, PgID 353.)

2

Defendant notes he was sentenced prior to 1) the Supreme Court holding in *United States v. Booker*, 543 U.S. 220, 245 (2005), that the sentencing guidelines are advisory and not mandatory, 2) the Supreme Court holding in *Dean v. United States*, 137 S. Ct. 1170, 1177 (2017), that courts may consider the mandatory consecutive sentences required by § 924(c) in fashioning an appropriate sentence on the remaining counts of conviction, and 3) Congress clarifying in Section 403 of the First Step Act that enhanced § 924(c) counts can only be "stacked" if the second offense occurs after a final conviction on the first offense.  Thus, Defendant argues that a sentence reduction is warranted in this case because if sentenced today, he would face a significantly shorter mandatory sentence.  More specifically, the mandatory sentence on his second § 924(c) count would be ten years, rather than twenty-five years, and the guideline range of 63 to 78 months on the remaining counts would be advisory and not mandatory.  Defendant also argues that the heightened risk of illness or death he faces if he contracts COVID-19 due to his diabetes is an additional reason warranting a sentence reduction in this case.  Defendant asks the Court to reduce his sentence to time served, which would be the approximate equivalent sentence of 24 years after accounting for good-time credit.  Defendant states that if he is released, he will be welcomed into the home of his loving father, a home his father owns and currently lives in by himself.

**II.     Analysis**

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify terms of imprisonment as follows:

> the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of

> such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>    (i)   extraordinary and compelling reasons warrant such a reduction; . . .
>    . . .
>    and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

The statute thus requires a defendant to both satisfy the exhaustion requirement and demonstrate that "extraordinary and compelling reasons" warrant a sentence reduction.

### A.   Exhaustion of Administrative Remedies

In the early stages of the COVID-19 pandemic, some courts excused a defendant's failure to exhaust his or her administrative rights with the Bureau of Prisons prior to bringing a motion for compassionate release. The Sixth Circuit, however, recently held that the administrative exhaustion requirement is mandatory and not subject to judge-made exceptions. *See United States v. Alam*, 960 F.3d 831, 833-34 (6th Cir. 2020). Despite being mandatory, the Sixth Circuit found that this requirement does not bear on the Court's jurisdiction. *See id.* at 833. Thus, as a non-jurisdictional claim processing rule, it "must be enforced" when "properly invoked" but can be forfeited or waived by the parties in a particular proceeding. *Id.* at 834 (internal quotation marks and citation omitted).

Here, Defendant made an administrative request for compassionate release to the Warden, and that request was denied. Yet, the government avers that Defendant has not fully exhausted his claim for compassionate release because his argument regarding a heightened risk of illness or death from COVID-19 was not raised in his

4

petition to the Warden. Defendant's position is that while the administrative exhaustion requirement is mandatory, there is no "issue exhaustion" requirement. Defendant notes that in any compassionate release motion based on health concerns, courts will need to consider "up to the minute" medical information. Defendant also notes that the statute directs courts to consider the factors in § 3553, which may include information that was not available to the BOP. Courts have come to differing conclusions on this issue. *Compare United States v. Asmar*, No. 18-20668, 2020 U.S. Dist. LEXIS 103726, at *8 (E.D. Mich. June 5, 2020) (stating that "[w]here the factual basis in the administrative request and the motion before the court are different, a defendant does not satisfy the exhaustion requirement because he does not give the BOP an opportunity to act on the request before Defendant brings his request to the courts") *with United States v. Brown*, No. 4:05-CR-00227-1, 2020 U.S. Dist. LEXIS 87133, at *10 (S.D. Iowa Apr. 29, 2020) (finding issue exhaustion "inappropriate because § 3582 contains no such requirement and BOP compassionate release requests are not adversarial proceedings").[2] The Court need not resolve this issue, however, because the government waives any objections to the exhaustion requirement by asking "this Court to address all of [Defendant's] arguments on the merits rather than dismissing the unexhausted claims without prejudice." (*See* dkt. 112, PgID 372.) Thus, Defendant's motion is properly before the Court.

---

[2] While the court in *Asmar* found that the defendant had not properly exhausted his claim, there, the defendant's administrative request had not referenced any of the health concerns the defendant later relied upon in his motion before the court. *See Asmar*, 2020 U.S. Dist. LEXIS 103726, at *8. Here, Defendant listed his diabetes in his petition to the Warden, and now argues that the threat of COVID-19 should be considered along with that same health condition. Also, Defendant's argument regarding the "stacking" of § 924(c) charges remains the same.

### B. Extraordinary and Compelling Reasons

The applicable Sentencing Commission policy statement sets forth the following four categories of "extraordinary and compelling reasons" for release: (A) medical condition of the defendant, (B) age of the defendant, (C) family circumstances, and (D) a "reason other than, or in combination with, the reasons described in subdivisions (A) through (C)" "as determined by the Director of the Bureau of Prisons," also known as the "catch-all" provision. See U.S.S.G. § 1B1.13, commentary n.1.

The government argues that § 1B1.13, which gives the BOP the discretion to identify "other" extraordinary and compelling reasons, is binding on this Court. The government also argues that because Congress did not make the amendment to § 924(c) retroactive, as it did other amendments, the change in law regarding "stacked" § 924(c) counts cannot serve as an extraordinary and compelling reason warranting relief. The government concedes, however, that the heightened risk that COVID-19 poses to Defendant due to his diabetes does constitute an extraordinary and compelling reason in this case.

Here, because the government concedes that Defendant's health concerns create extraordinary and compelling circumstances, the Court need not resolve the issues raised by Defendant's argument regarding the "stacking" of § 924(c) counts. The Court notes, however, that because § 1B1.13 was not updated after Congress revised § 3582(c) in the First Step Act to "Increase the Use and Transparency of Compassionate Release," allowing defendants, for the first time, the right to petition courts directly for compassionate release, most courts that have considered this issue have held that the discretion to identify other extraordinary and compelling reasons previously reserved for

6

the BOP is now given to the courts. *See, e.g.*, *United States v. Young*, No. 2:00-cr-00002-1, 2020 U.S. Dist. LEXIS 37395, at *15-17 (M.D. Tenn. Mar. 4, 2020) (listing cases). And even though the amendment to § 924(c) was not made retroactive, "[i]t is not unreasonable for Congress to conclude that not all defendants convicted under § 924(c) should receive new sentences, even while expanding the power of the courts to relieve some defendants of those sentences on a case-by-case basis." *United States v. Maumau*, No. 2:08-cr-00758-TC-11, 2020 U.S. Dist. LEXIS 28392, at *16-17 (D. Utah Feb. 18, 2020); *see also Brown*, 2020 U.S. Dist. LEXIS 87133, at *21 (stating the court was "sensitive to the fact that retroactivity for sentencing calculations generally is the Legislature's province," but "still consider[ing] the resulting sentencing disparity as part of a motion for compassionate release"). Thus, while the sentencing disparities that result from the First Step Act's amendment to § 924(c) do not necessarily constitute extraordinary and compelling reasons warranting a sentence reduction, the Court is mindful of this factor in this case.

The Court now turns to Defendant's health concerns. Because Defendant has Type II diabetes, he faces an increased risk of severe illness if he contracts COVID-19. *See* Coronavirus, World Health Organization, https://www.who.int/health-topics/coronavirus#tab=tab_1 (visited July 19, 2020) (stating that the populations more likely to suffer severe illness from COVID-19 are "[o]lder people, and those with underlying medical problems like cardiovascular disease, diabetes, chronic respiratory disease, and cancer"); *see also* People with Underlying Medical Conditions, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (visited July 19, 2020) (stating that people

7

with Type II diabetes are "at an increased risk of severe illness from COVID-19").[3] Thus, the Court finds, as the government concedes, that this risk constitutes an extraordinary and compelling reason warranting a sentence reduction in this case. Other courts have reached the same conclusion under similar circumstances. *See, e.g.*, *United States v. Mitchell*, No. 4:13-cr-20468, 2020 U.S. Dist. LEXIS 123327, at *10-11 (E.D. Mich. July 14, 2020) (reasoning that while the defendant's Type II diabetes and hypertension "may not fall within the category of 'a serious physical or medical condition' during ordinary times," they did in the context of the COVID-19 pandemic). And while the government notes that FCI Pekin had no confirmed cases of COVID-19 at the time of its response, this Court has previously found that a lack of confirmed cases is not a sufficient reason not to grant relief to a defendant who otherwise qualifies for it. *See United States v. Rahim*, No. 16-20433, 2020 U.S. Dist. LEXIS 89355, at *8-9 (E.D. Mich. May 21, 2020). Having found that Defendant has presented extraordinary and compelling reasons warranting a reduction in his sentence, the Court will turn to a consideration of the remaining relevant factors.

### C. Other Relevant Factors

Section 1B1.13 provides that a defendant's sentence should be reduced under § 3582(c)(1)(A) only if releasing the inmate will not pose a danger to the safety of others or the community. § 1B1.13(2) (citing 18 U.S.C. § 3142(g)). Moreover, the Court must consider the sentencing factors set forth in 18 U.S.C. § 3553(a) to the extent that they

---

[3] Defendant also has hypertension, which "might be an increased risk of severe illness from COVID-19." *See* People with Underlying Medical Conditions, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html.

are applicable. See § 3582(c)(1)(A). These sentencing factors are "largely duplicative" of the factors found in § 3142(g), see *United States v. Rountree*, No. 1:12-CR-0308 (LEK), 2020 U.S. Dist. LEXIS 91064, at *32 (N.D.N.Y. May 18, 2020), and include the defendant's history and characteristics, the seriousness of the offense, the need to promote respect for the law and provide just punishment for the offense, general and specific deterrence, protection of the public, and the need to avoid unwarranted sentencing disparities, see § 3553(a).

The government argues that Defendant is not entitled to the relief he seeks because he remains a danger to society and the § 3553 factors weigh against his release. The Court disagrees.

The government relies in large part on Defendant's disciplinary record in prison to argue he remains a danger to society. However, the last of his misconducts took place in 2011—over nine years ago. (*See* dkt. 113-3, filed under seal.) Defendant's clean record during the last nine years combined with his completion of a GED and a large number of classes support his contention that he has shown positive rehabilitation. Defendant's serious medical problems and vulnerability to COVID-19 are also relevant personal characteristics. The fact that his health has deteriorated to the extent he is blind in one eye and losing vision in the other eye also weighs against a finding that Defendant poses a continue danger to the public. And while Defendant's offenses were very serious, he has served a significant term of imprisonment, serving the goals of promoting respect for the law, just punishment for the offense, and deterrence. Also, as indicated above, a sentence reduction in this case serves the goal of avoiding unwarranted sentencing disparities due to the recent amendment to § 924(c). In sum,

the Court finds that a consideration of the § 3553 factors weighs in favor of granting Defendant compassionate release.

### III. Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's motion to reduce sentence under 18 U.S.C. § 3582(c)(1)(A) is GRANTED. The custodial portion of Defendant's sentence is reduced to time served, and the Court imposes a new term of supervised release of four years.

Defendant shall serve the first one year of the new term of supervised release under home detention and shall not leave his residence other than for medical appointments and appointments with counsel. During this one year of home detention, Defendant shall be subject to electronic location monitoring to commence as soon as the Probation Department can safely install the necessary electronic monitoring equipment and upon such other considerations as the Probation Department deems necessary. Defendant must contact the Probation Department within twenty-four (24) hours of release from BOP custody to schedule an appointment.

After serving the first one year of supervised release in home detention, Defendant shall serve the remaining three years of supervised release according to the original conditions of Defendant's three-year supervised release term that the Court had imposed in its original judgment.

It is further ordered that unless Defendant has been in a segregated special unit for high-risk prisoners for more than 14 days where no inmate has tested positive or shown symptoms of COVID-19 within the past 14 days, Defendant shall self-quarantine within his home for 14 days upon his release.

Defendant's original sentence remains unchanged in all other respects.

SO ORDERED.

                              s/Nancy G. Edmunds
                              Nancy G. Edmunds
                              United States District Judge

Dated: July 22, 2020

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 22, 2020, by electronic and/or ordinary mail.

                              s/Lisa Bartlett
                              Case Manager